Domingo **VILLAROSA**

v.

**MASSACHUSETTS TRUSTEES OF EASTERN GAS & FUEL ASSOCIATES.**

Civ. A. No. 32651.

United States District Court
E. D. Pennsylvania.

Jan. 13, 1966.

338

Dorfman, Pechner, Sacks & Dorfman, by Sidney J. Smolinsky, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, by Robert Cox, Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

This is an action under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law seeking damages for personal injuries sustained by plaintiff while he was employed as a merchant seaman aboard the SS "Boston". The defendant admittedly owned, operated, managed and controlled the vessel. The claim is based on the allegation that on April 14, 1962, while plaintiff was performing his duties, a steam line burst and he was scalded. Plaintiff has moved for summary judgment on the issue of liability. Fed.R.Civ.P. 56.

The action was commenced on January 15, 1963 and an answer was filed on July 9, 1963. On October 16, 1964 plaintiff filed the following requests for admission under Fed.R.Civ.P. 36:

"1. On August 14, 1962, while the SS 'Boston' was at sea, plaintiff met with an accident in the vessel's fireroom when he preparing to blow tubes.

"2. At 1:00 o'clock P.M. on August 14, 1962, the plaintiff's right arm and both legs were scalded by steam when about four (4) inches of the soot blower steam line split open.

"3. At the time of the accident, plaintiff was closing the steam drain valve. The other wiper, Charles E. Waite was also in the fireroom and turned on the steam soot blowing line.

"4. At the time of the accident, the Second Assistant Engineer was in the fireroom. He had ordered plaintiff to blow the tubes.

"5. Plaintiff's injury was reported immediately to the Chief Engineer, E. L. Boyette, who inspected the soot blower steam line and found that about four (4) inches of the lower part of that line was split open."

On November 6, 1964 defendant answered the requests:

"1 through 7. Defendant admits the authenticity of the document entitled Report of Personal Injury but at this time Defendant can neither admit nor deny the truthfulness of the statements contained therein."

Fed.R.Civ.P. 36(a) provides in part:

" * * * Each of the matters of which an admission is requested shall be deemed admitted unless, * * * the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matter of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters * * * "

■■■ Defendant's answers fall far short of the requirements of the Rule, lacking as they did "a sworn statement * * * setting forth in detail the reasons" why defendant could not truthfully admit or deny the requests. When a party to whom requests for admissions are directed fails to respond either with a sworn denial or a sworn detailed explanation of his inability to admit or deny, the requests are deemed admitted. Fed.R.Civ.P. 36(a). The answers are defective, too, because they are not sworn to by the party, but are merely signed by counsel. This is not the sort of response contemplated by the Rule. Cf. Mahoney v. McDonald, Adm'r, 38 F.R.D. 161 (E.D.Pa.1965), C.A. No. 36826.

The relevant record before us, then, consists of the complaint, answer and requests for admission that have been deemed admitted. Defendant has not, to this date, challenged the facts in the requests. Unquestionably, during that time, defendant has had more than ample time to develop the facts. Fed.R.Civ.P. 56 permits counter-affidavits to be filed at any time before the argument and Rule 56(f) even provides for continuance of the summary judgment argument to provide opportunity to obtain counter-affidavits. Defendant has done nothing to avail itself of the wide latitude afforded by Rule 56, although the accident happened over three and a half years ago. In Robin Construction Company v. United States, 345 F.2d 610, at pages 613–614 (C.A.3, 1965), Judge Freedman said:

" * * * The purpose of summary judgment would be defeated if a party who has obtained by discovery and from affidavits information which he should seek to amplify or test by further discovery, merely rests on a statement of ignorance of the facts. Indeed, subdivision (f) of Rule 56, by affording an opportunity for continuance of an application for summary judgment so as to permit affidavits to be obtained or depositions to be taken or discovery to be had, indicates that absent such effort it is idle to attempt to shrug off the facts which his adversary has presented. As has often been pointd out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone without discovery is not enough. * * * It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural. * * * "

■■■ We are therefore confronted with this: plaintiff, while doing his job on board the vessel, was injured when a steam line which was being put to its intended use split open. We can reach no other conclusion than that, under the facts, the vessel was unseaworthy as a matter of law. The defendant was under a duty to provide plaintiff a ship with appurtenances reasonably fit for their intended use. Mahnich v. Southern Steamship Company, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). It is a duty the violation of which does not depend on negligence. Mitchell v. Trawler

**340**

Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). It cannot be doubted that a steam line which burst when it was turned on was not reasonably fit for the purpose for which it is ordinarily used, and hence, was an appurtenance which rendered the vessel unseaworthy.

In Wing v. Rockport Steamship Company, 30 F.R.D. 349 (W.D.Mich.N.D. 1962), plaintiff was injured when a boom broke and fell. The court said, at page 351:

> " * * * There is no question but what the boom broke. It was part of the gear of the ship. And in the light of the cases cited, this court is satisfied that, as defendant's counsel started to concede and later changed his mind, the jury could reach no logical conclusion except that the gear was defective. And under the Petterson case [Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478] and Grillea case [Grillea v. United States, 2 Cir., 229 F.2d 687] if the gear was defective, the ship was unseaworthy. The two terms are synonymous.

> "Now, defendant's counsel makes an issue out of the fact that the gear must be 'reasonably' suitable for the use to which it was put. No evidence was indicated at all on the record of this case as to the reasonableness of the equipment. That was not brought in issue. It was not an issue to be resolved by the jury. Until some explanation other than defect was offered to the jury to explain the breaking of the boom, the ship was unseaworthy. * * * "

It seems to us logically inescapable that if a part of the ship's gear is put to its intended use and breaks during that usage, the vessel is unseaworthy. That is what happened here. The plaintiff is entitled to judgment on the issue of liability, and it is so ordered.